M.J. No. 19-7281-JCB

AFFIDAVIT IN SUPPORT OF APPLICATION FOR A COMPLAINT

I, Glen Coletti, being sworn, state:

INTRODUCTION

1. I have been a Special Agent with the Drug Enforcement Administration (DEA) since 1997. Most recently, I have been assigned to Task Force 4, Cross Borders Initiative (CBI) of the DEA's Boston Division since 2003. As such, I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516, Title 18, United States Code.

2. In October 1997, I attended, and graduated from, the DEA's seventeen-week Basic Agent academy in Quantico, Virginia. Upon completion of that academy, I was assigned to the Baltimore District Office, Baltimore, Maryland, where I performed investigative duties in the field of narcotics enforcement for approximately three years. In 2001, I was transferred to the Boston Field Division and assigned to the Manchester Resident Office, Manchester, NH. In October 2003, I was reassigned to DEA Boston's, Task Force 4/CBI in North Andover, MA.

3. During the course of my employment with the DEA, I have received specialized training regarding the activities of illegal drug traffickers and various aspects of controlled substances investigation, including the methods used to package, transport, store, and distribute controlled substances, and the methods used by drug traffickers to conceal and launder the proceeds of their illegal drug trafficking activities. I also have a Bachelor of Science degree in Criminal Justice from Northeastern University.

4.     In addition to my training, I have had extensive experience in the investigation of the activities of illegal drug traffickers. Since joining the DEA, I have participated in hundreds of controlled substances investigations as a case agent and in subsidiary roles relating to the distribution of controlled substances, including cocaine, cocaine base, heroin, marijuana, methamphetamine, and other illegal substances. I have personally participated in almost all aspects of drug trafficking investigations, including but not limited to conducting surveillance, acting in undercover capacities, using confidential informants, executing arrest and search and seizure warrants, and conducting court authorized wire and electronic surveillance. I have debriefed numerous defendants, informants, and witnesses who had personal knowledge about drug trafficking activities and the operation of drug trafficking organizations. I have sworn out numerous affidavits in support of search warrants, arrest warrants and other court applications.

5.     As a result of my training and experience, I am familiar with the manner in which drug traffickers use telephones; coded, veiled, or slang-filled telephone conversations; electronic text messages; and other means to facilitate their illegal activities. I am also familiar with the "street" language used by drug traffickers, as well as the methods they use to disguise conversations and operations. Based on my training and experience, I am familiar with the methods of operation used by drug traffickers, including the use of cellular telephones to conduct their drug trafficking activities.

6.     In addition, based on my training and experience, I understand illegal drug trafficking often involves the local, interstate, and international movement of illegal drugs to distributors and co-conspirators at multiple levels, and the movement of the proceeds of drug trafficking among multiple participants including suppliers, customers, distributors and money launderers.

## PURPOSE OF AFFIDAVIT

4. I submit this affidavit in support of a Criminal Complaint charging BERNARDITO CARVAJAL ("CARVAJAL") with violating Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

5. I am familiar with the facts and circumstances of this investigation from my own personal participation and from oral reports made to me by agents of DEA and other federal, state, and local law enforcement agencies.

6. This Affidavit is submitted for the limited purpose of establishing probable cause to believe that CARVAJAL has committed the above offense. Accordingly, I have not included each and every fact known to me and other law enforcement officers involved in this investigation. I have set forth only the facts that I believe are needed to establish the requisite probable cause.

## EVIDENCE IN SUPPORT OF PROBABLE CAUSE

7. The Andover Police have been investigating the death of R. T., a 26 year old who died of an apparent drug overdose on June 13, 2019. After reviewing electronic devices and social media accounts belonging to R. T., Andover police identified an individual known as "Bernardito" with the phone number 351-277-9880, who law enforcement believe supplied R. T. with drugs.

8. An undercover investigator ("UC-1") sent a text message to 351-277-9880 to initiate a drug transaction at approximately 2:27 p.m. on July 31, 2019. UC-1 texted, "Any chance u got white[?]" In my training and experience "white" is street slang for fentanyl. The individual operating phone number 351-277-9880 offered to sell UC-1 approximately 14 grams for $400, stating by text message, "For 400 I can [sic] 1 finger and 4 g."[1] The individual operating phone

---

[1] One "finger" is a package containing approximately 10 grams of compressed powder.

number 351-277-9880 directed UC-1 to Neck Road in Haverhill, Massachusetts, and UC-1 stated he would be there at approximately 3:15 p.m.

9. At approximately 3:15 p.m. the individual operating phone number 351-277-9880 called UC-1. At approximately 3:22 p.m., law enforcement observed a white Lexus sedan with Massachusetts license plate 8KB155 occupied by a Hispanic male, later identified as CARVAJAL, in the area of Neck Road, Haverhill, Massachusetts. CARVAJAL encountered UC-1, and UC-1 entered the passenger seat of the white Lexus. UC-1 rode with CARVAJAL for about 0.25 miles. CARVAJAL handed UC-1 approximately 14 grams of fentanyl—one "finger," a plastic bag containing approximately 10 grams of compressed white powder, and four small plastic bags each containing approximately 1 gram of white powder. UC-1 gave CARVAJAL $400 in U.S. currency then exited the car and informed law enforcement that the drug transaction was completed successfully.

10. Moments later, law enforcement activated their cruiser lights in an attempt to stop CARVAJAL. CARVAJAL continued to drive until a patrol car pulled in front of CARVAJAL's car, blocking his way. CARVAJAL was ultimately apprehended and taken into custody. Law enforcement searched CARVAJAL's car and found $400 in U.S. currency and two cell phones—one of which was powered off. When law enforcement dialed phone number 351-277-9880, the phone call went straight to voicemail.

11. After his arrest, CARVAJAL initially identified himself as Christian Mendez-Acevedo, provided a fake birth date and social security number, and claimed to be from Puerto Rico. But law enforcement soon realized that CARVAJAL was not the person pictured in Christian Mendez-Acevedo's driver's license photo. Using CARVAJAL's fingerprints, law enforcement identified him as Bernardito Carvajal, a citizen of the Dominican Republic who

entered the United States on April 21, 2017 on a B2 tourist visa.  Law enforcement also observed that CARVAJAL resembled the individual known as "Bernardito" who was identified from R. T.'s social media account.

12.     Field testing was conducted on the "finger" and two of the small plastic bags of white powder sold by CARVAJAL using a TruNarc handheld narcotics analyzer.  Because of safety concerns, law enforcement did not remove the white powder from the plastic bags, but instead attempted to analyze the white powder through the plastic packaging.  The handheld narcotics analyzer was unable to detect fentanyl, but identified known cutting agents such as lactose and mannitol.  I know, based on my training and experience, that plastic packaging can impair the accuracy of the tests conducted using the TruNarc handheld narcotics analyzer.  Lab testing in a controlled environment is necessary to identify the true composition of the white powder.

CONCLUSION

13. Based on the foregoing, there is probable cause to believe that on July 31, 2019, BERNARDITO CARVAJAL did knowingly and intentionally possess with intent to distribute a fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

I declare that the foregoing is true and correct.

Glen Coletti
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me,
this 1st day of August, 2019.

Honorable Jennifer C. Boal
United States Magistrate Judge
District of Massachusetts